NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FISCHER THOMPSON BEVERAGES, INC., | : : : | Civil Action No. 07-4585 (SRC) |
| Plaintiff, | : : | **OPINION** |
| v. | : : | |
| ENERGY BRANDS INC., d/b/a GLACEAU, | : : : | |
| Defendant. | : : | |

**CHESLER**, District Judge

  This matter comes before the Court upon the motion for a preliminary injunction filed by Plaintiff Fischer Thompson Beverages, Inc. ("Fischer Thompson") [docket item # 16]. Defendant Energy Brands Inc., d/b/a Glaceau ("Glaceau") has opposed the motion. The Court held oral argument on the application on October 30, 2007. The Court has reviewed the papers submitted and considered the arguments presented by the parties. For the reasons discussed below, the motion for a preliminary injunction will be denied.

**I. BACKGROUND**

  This action arises out of the termination of a business relationship between the parties. Plaintiff Fischer Thompson, a New Jersey corporation, operates in northern and central New Jersey selling and distributing beverages, including those manufactured by Defendant Glaceau.

According to the Complaint, Glaceau is engaged in the business of manufacturing and selling "enhanced water" drinks under various trade names and marks.  Fischer Thompson maintains one physical business location, an approximately 40,000 square-foot facility in Flanders, New Jersey.  From the information presented to the Court, it appears that with a handful of exceptions, most sales by Fischer Thompson of Glaceau's products occur on the road, that is, at the various retail sites to which Fischer Thompson distributes the products.

Although the relationship between the parties commenced in or about 1996, the parties had been doing business under an oral agreement until 2005.  In July 2005, they entered into a written "Distribution Agreement," which was in force at all times relevant to the wrongs complained of by Plaintiff in this lawsuit.  By letter of August 30, 2007, Glaceau advised Fischer Thompson that it was exercising its right to terminate the Distribution Agreement.  In relevant part, the Distribution Agreement provides: "Supplier [Energy Brands, Inc.] may terminate this Agreement without cause, in its absolute and sole discretion, at any time upon 60 days advanced written notice to Distributor [Fischer Thompson]."  (Distribution Agreement at ¶ 12.4, attached to Complaint as Ex. A.)  The August 30, 2007 letter stated that the Distribution Agreement "shall be deemed terminated and of no further force and effect as of Friday, November 2, 2007." (Complaint, Ex. B.)

Shortly thereafter, Fischer Thompson filed a legal action against Glaceau in the Superior Court of New Jersey, Morris County.  The Complaint alleges that Glaceau wrongfully terminated the business relationship between the parties in violation of the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1, et seq. ("Franchise Practices Act").  Upon Fischer Thompson's application for an Order To Show Cause with temporary restraints, the state court directed

Glaceau to show cause why it should not be enjoined from terminating the business relationship. Glaceau removed the case to this Court, on the basis of diversity jurisdiction, and this Court proceeded with Fischer Thompson's application for a preliminary injunction.

After initial briefing and oral argument on October 5, 2007, the Court denied the application without prejudice, finding that based on the information presented it could not conclude that Fischer Thompson had demonstrated that it had a reasonable likelihood of success on the merits of its claims – specifically, that it was a franchise entitled to the protections of the Franchise Practices Act – and that it had established that it would sustain irreparable harm as a result of Glaceau's actions. The Court directed the parties to engage in limited discovery focusing on whether Fisher Thompson meets the Franchise Practices Act's "place of business" requirement and on the issue of irreparable harm. Following that discovery, Fischer Thompson re-filed the instant application for a preliminary injunction, and the Court once again held oral argument on October 30, 2007.

## II.     LEGAL ANALYSIS

### A.     Preliminary Injunction Standard

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Frank's GMC Truck Ctr., Inc. v. G.M.C., 847 F.2d 100, 102 (3d Cir. 1988) (internal citation omitted). The United States Court of Appeals for the Third Circuit has held that a district court considering a motion for a preliminary injunction must be satisfied that the following factors favor granting the relief sought: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable

harm if the injunction is issued; and (4) the public interest.  Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002).  The burden is on the party seeking injunctive relief to establish these factors.  Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C., 212 F.3d 157, 160-161 (3d Cir. 2000).  The Third Circuit has stressed that the moving party must make a "strong showing" that it is likely to prevail on the merits.  Id. at 160; see also Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975) (holding that while "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt . . . the burden is on the party seeking relief to make a [p]rima facie case showing a reasonable probability that it will prevail on the merits.").

**B.      Discussion**

Fischer Thompson's application for a preliminary injunction hinges on its claim to the protections of the Franchise Practices Act.  The Franchise Practices Act restricts a party's ability to terminate the franchise business relationship, generally prohibiting franchisors from terminating a franchisee without "good cause."  N.J.S.A. 56:10-5.  On the other hand, the Distribution Agreement between Fischer Thompson and Glaceau expressly gives Glaceau the right to terminate the relationship "without cause."  The Franchise Practices Act, however, applies only

> to a franchise (1) the performance of which contemplates or requires the franchise to establish or maintain a *place of business* within the State of New Jersey, (2) where gross sales of products or services between the franchisor and franchisee covered by such franchise shall have exceeded $35,000 for the 12 months next preceding the institution of suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise.

N.J.S.A. 56:10-4 (emphasis added).

The threshold question in this case is whether Fischer Thompson maintains a "place of business" in New Jersey within the meaning of the Franchise Practices Act. The statute defines "place of business" as "a fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods or offers for sale and sells the franchisor's services." N.J.S.A. 56:10-3(f). It expressly excludes from the definition "an office, warehouse, a place of storage, a residence or a vehicle." Id. The place of business requirement "ensures that only those businesses that operate as genuine franchises will obtain the protection of the Act." Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 349 (1992). The New Jersey Supreme Court has held that "'there must be a sales location in New Jersey. Mere distribution through an office or warehouse [will] not qualify.'" Id. (quoting Greco Steam Cleaning, Inc. v. Assoc. Dry Goods Corp., 257 N.J. Super. 594, 598 (Law Div. 1992)).

The Court must deny Fischer Thompson's motion for a preliminary injunction because the movant has failed to sustain its burden of establishing a reasonable likelihood of success on the merits of its claim for wrongful termination in violation of the Franchise Practices Act. More specifically, it has not made a showing that there is a reasonable likelihood that it will establish it had a "place of business" as defined by the Franchise Practices Act. Without this statutory protection, Fischer Thompson is subject to the terms of the termination provision of the Distribution Agreement it negotiated and entered into with Glaceau.

While Fischer Thompson does maintain a fixed geographic location in the State of New Jersey - its 40,000 square-foot facility in Flanders - the evidence before the Court does not bear out that it is a hub of Fischer Thompson's sales activity or that any substantial sales, product

5

promotion or related interaction with purchasers of Glaceau products take place at the facility. It appears that a large part, if not to say most, of the physical space is dedicated to either warehouse or office use. Warehouses and offices are, of course, specifically excluded from qualifying as a place of business under the Franchise Practices Act. Fischer Thompson has not shown that selling is a "major activity" at the Flanders facility. Liberty Sales Assoc., Inc. v. Dow Corning Corp., 816 F.Supp. 1004, 1009 (D.N.J. 1993). While the Third Circuit has held that New Jersey law would not require sales to be necessarily consummated at the facility, Cooper Dist. Co., Inc. v. Amana Refrigeration, Inc., 63 F.3d 262, 274-75 (3d Cir. 1995), the jurisprudence directs that the "place of business" requirement would at least require some substantial level of marketing to the customer or other sales-related interplay with customers at the location. Id. at 274-75 (predicting that New Jersey Supreme Court would hold that plaintiff's showroom was a place of business based on the use of the facility as a showroom and marketing center where regular and frequent product demonstrations to customers and product dealer training would occur); Liberty Sales Assoc., Inc., 816 F.Supp. at 1009 (observing that while partial use of a business facility for storage or office work would not automatically exclude it from being a place of business, sales efforts at the location in question were basically limited to telephoning potential buyers from the residential office/warehouse and the location therefore fell outside the Franchise Practices Act); Instructional Sys., Inc., 130 N.J. at 350-51 (holding that facility was more than a "mere sales office or warehouse" because it also largely functioned as a product showroom, where more than 100 product demonstrations a year were given to prospective customers). In sum, the selling activity contemplated by the Franchise Practices Act's definition of "place of business" involves "the interplay of good on display, the physical presence of the customer and the selling efforts of

the vendor." Liberty Sales Assoc., Inc., 816 F.Supp. at 1009.

Based on the caselaw discussing the Franchise Practices Act's "place of business" requirement, this Court concludes that the evidence and information about the sales activity at Fischer Thompson's New Jersey location fall far short of the required showing. In opposition to the instant application for a preliminary injunction, Glaceau has presented evidence that minuscule on-site sales activity occurs at the Flanders facility. Of the over $10.8 million in Fischer Thompson sales of Glaceau products between January 1, 2005 and September 30, 2007, less than $44,000 was generated from walk-in sales. Glaceau also points out that of more than 1,000 customers, Fischer Thompson can identify only 17 that came to pick up Glaceau products at the Fischer Thompson facility within the last three years. It appears that product displays consist largely of items available, for viewing or consumption, in the conference room and kitchen, which although utilized occasionally to host potential consumers visiting the facility, seem to be predominantly intended for employee use. Product is also "displayed" on pallets, but this does not appear to amount to more than product storage in the warehouse, in a manner making it ready for loading onto trucks for distribution. Other than arguing that customers who do come to the facility taste test the product, Fischer Thompson does not provide any evidence that the facility is utilized in any significant way as a marketing center or showroom. Fischer Thompson's conclusory statement that sales occur "regularly" at the facility is not supported by facts, and precedent compels the conclusion that the occasional on-site sale or product demonstration that may occur at the Flanders facility does not rise to the level of major selling activity. In short, while the Court need not and does not make any ultimate determinations about the nature of Fischer Thompson's business, it concludes that at this point, Fischer Thompson has

failed to show a reasonable likelihood that the Flanders facility is a locus of sales activity involving interaction between Fischer Thompson salespeople and actual or potential customers of the Glaceau products it distributes – as opposed to a mere office or warehouse.

Thus, Fischer Thompson has not met its burden of demonstrating a likelihood of success on the merits of its wrongful termination claim. A preliminary injunction, prohibiting Glaceau from exercising its right to terminate the Distribution Agreement as provided by the contract, is not warranted. Accordingly, Fischer Thompson's motion will be denied.

### III.  CONCLUSION

For the foregoing reasons, this Court denies Fischer Thompson's motion for a preliminary injunction. An appropriate form of order will be filed together with this Opinion.

         s/ Stanley R. Chesler
         STANLEY R. CHESLER
         United States District Judge

DATED: November 8, 2007